## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. _____

JOEL WHITMAN, individually and on behalf of all others similarly situated,
     Plaintiff,

v.

DCP MIDSTREAM, LLC

     Defendant.

### ORIGINAL COLLECTIVE ACTION COMPLAINT

1.     Plaintiff Joel Whitman ("Whitman") brings this lawsuit to recover unpaid overtime wages and other damages from Defendant DCP Midstream, LLC ("DCP") under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").

2.     DCP uses inspectors, like Whitman, to carry out its work.

3.     Whitman, and the other workers like him, typically worked 10 hour shifts and regularly worked more than 60 hours per week.

4.     But DCP did not pay all of these workers overtime for hours worked in excess of 40 hours in a single workweek.

5.     Instead of paying overtime as required by the FLSA, DCP paid these workers a day-rate with no overtime pay.

6.     This action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION & VENUE

7.     This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because DCP is headquartered in this District.

## PARTIES

9.      From approximately March 2017 until March 2019, Whitman worked for DCP as an Utility and Coating Inspector.

10.     Throughout his work with DCP, he was paid a day-rate with no overtime compensation. His consent to be a party Plaintiff is attached as Exhibit A.

11.     Whitman brings this action on behalf of himself and other similarly situated inspectors who were paid by DCP's day-rate system.

12.     DCP paid each of these workers a flat amount for each day worked and failed to pay them overtime for hours worked in excess of 40 hours in a workweek.

13.     The class of similarly situated workers sought to be certified as a collective action under the FLSA is defined as:

> **Current and former inspectors employed by, or performing work on behalf of, DCP Midstream, LLC and paid a day-rate without overtime during the past three years.** (the "Putative Class Members").

14.     Whitman seeks conditional and final certification of this FLSA collective action under 29 U.S.C. § 216(b).

15.     DCP Midstream, LLC may be served through its registered agent for process, CT Corporation System, at 7700 E Arapahoe Rd Ste 220, Centennial, CO 80112-1268.

## COVERAGE UNDER THE FLSA

16.     For at least the past decade, DCP has consistently employed hundreds of inspectors in the United States.

17.     At all times hereinafter mentioned, DCP has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

18.     At all times hereinafter mentioned, DCP has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

19.     At all times hereinafter mentioned, DCP has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

20.     Whitman and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

21.     DCP is a Fortune 500 natural gas company that is "one of the largest natural gas liquids producers and marketers, and one of the largest natural gas processors in the United States," with assets across nine states and headquartered in Denver, Colorado[1]

22.     In order to make the goods and provide the services it markets to its customers, DCP employs inspectors like Whitman and the Putative Class Members.

23.     DCP relies on Whitman and the Putative Class Members to ensure the safe transportation of goods in interstate commerce.

24.     DCP's goods include oil and gas which travel through DCP's pipelines across state lines.

25.     Whitman and the Putative Class Members were responsible for the safe transportation of DCP's goods through their job duties of inspecting elements of the pipeline infrastructure.

---

[1] https://www.dcpmidstream.com/ (last visited November 10, 2020)

26.     Whitman and the Putative Class Members traveled interstate to perform their duties of inspecting elements of the pipeline infrastructure.

27.     Whitman and the Putative Class Members used tools, equipment, and consumables in their work interstate on oil and gas pipeline and related infrastructure.

28.     Whitman and the Putative Class Members are involved in the building, modifying, and maintaining the oil and gas transportation network of pipelines and related infrastructure.

29.     Whitman and the Putative Class Members use their vehicles to perform essential aspects of their inspection related job duties.

30.     Whitman and the Putative Class Members use their vehicles to carry tools, equipment, and consumables that are used on the oil and gas transportation network of pipelines and related infrastructure.

31.     Whitman and the Putative Class Members work alongside other workers who are themselves engaged in building, modifying, and maintaining the oil and gas transportation network of pipelines and related infrastructure.

32.     DCP cannot operate its pipelines and allow their goods to travel within interstate commerce without the job duties performed by Whitman and the Putative Class Members.

33.     Whitman and the Putative Class Members are essential to DCP's operations.

34.     DCP's pipelines exist as a conduit, much like roads or railways, to allow goods to enter and take part in interstate commerce.

35.     Whitman and the Putative Class Members duties are vital to allowing oil and gas to travel from the oil and gas fields to refineries.

36.     DCP's entire industry is related to the exploration, production, and transportation of oil and gas goods.

37.     Whitman and the Putative Class Members are regularly a part of interstate commerce.

38.     Whitman and the Putative Class Members operate vehicles that are crossing state lines.

39.     Whitman and the Putative Class Members operate vehicles with a gross vehicle weight rating of 10,000 lbs or less.

40.     Whitman and the Putative Class Members contribute to and/or facilitates the movements of DCP's goods in interstate commerce.

41.     Whitman and the Putative Class Members job duties directly relate to the safe transportation of DCP's goods.

42.     If Whitman and the Putative Class Members do not perform their job duties correctly, DCP's pipelines and infrastructure could explode, causing serious personal and financial harm.

43.     DCP markets its infrastructure as a transmission and transportation network of pipelines.

44.     To complete their business objectives, DCP hired personnel, such as Whitman, to perform inspection services.

45.     As a result, Inspectors are an integral part of DCP's business operations.

46.     Being an Inspector is not work requiring specialized academic training as a standard prerequisite.

47.     To the extent the Putative Class Members make "decisions," the decisions do not require the exercise of independent discretion and judgment.

48.     Instead, DCP's Inspectors apply well-established techniques and procedures.

49.     Inspectors are not permitted to deviate from established quality standards.

50.     These Inspectors are blue collar workers. They rely on their hands, physical skills, and energy to perform manual labor in the field.

51.     With these job duties, these Inspectors are clearly **non-exempt** under the FLSA.

52.     DCP paid Whitman and the Putative Class Members a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

53.     Whitman worked for DCP from approximately March 2017 until March 2019 as an Inspector.

54.     Whitman would conduct his day to day activities within designated parameters and in accordance with a predetermined construction or pipeline plan.

55.     Whitman was paid on a day-rate basis throughout his employment with DCP.

56.     Whitman and the Putative Class Members were not paid a salary.

57.     DCP typically scheduled Whitman to work 10 hour shifts, for 6 days a week, for weeks on end.

58.     During each year of his employment, Whitman regularly worked well in excess of 40 hours in a workweek.

59.     But DCP did not pay Whitman overtime.

60.     Whitman and the Putative Class Members worked for DCP over the past three years across the United States.

61.     As a result of DCP's pay policies, Whitman and the Putative Class Members were denied the overtime pay required by federal law.

62.     DCP keeps accurate records of the hours, or at least days, its employees work.

63.     It also keeps accurate records of the amount of pay these workers receive.

64.     Despite knowing the FLSA requirements and that its inspectors regularly worked more than 40 hours in a workweek, DCP does not pay them overtime.

65.     The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

- 6 -

66.     The Putative Class Members regularly worked in excess of 40 hours each week.

67.     Like Whitman, the Putative Class Members were generally scheduled for daily shifts of 12 (or more) hours for weeks at a time.

68.     DCP did not pay Whitman on a salary basis.

69.     DCP did not pay the Putative Class Members on a salary basis.

70.     DCP paid Whitman on a day-rate basis.

71.     DCP paid the Putative Class Members on a day-rate basis.

72.     DCP failed to pay Whitman overtime for hours worked in excess of 40 hours in a single workweek.

73.     DCP failed to pay the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

## FLSA VIOLATIONS

74.     Whitman incorporates the preceding paragraphs by reference.

75.     As set forth herein, DCP violated the FLSA by failing to pay Whitman and the Putative Class Members overtime at one and one-half times the regular rate of pay under the hourly system, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

76.     At all relevant times, DCP has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

77.     DCP employed Whitman and each member of the Class.

78.     DCP's pay policy denied Whitman and the Putative Class Members overtime compensation at the legal overtime rates required by the FLSA.

79.     DCP owes Whitman and the Putative Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

80.     DCP knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Its failure to pay overtime to Whitman and the Putative Class Members is willful.

81.     Due to DCP's FLSA violations, Whitman and the Putative Class Members are entitled to recover from DCP for their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

82.     The improper pay practices at issue were part of a continuing course of conduct, entitling Whitman and Putative Class Members to recover for all such violations, regardless of the date they occurred.

## COLLECTIVE ACTION ALLEGATIONS

83.     The illegal pay practices DCP imposed on Whitman were likewise imposed on the Putative Class Members.

84.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

85.     Numerous other individuals who worked with Whitman were classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

86.     Based on his experiences and tenure with DCP, Whitman is aware that DCP's illegal practices were imposed on other Putative Class Members.

87.     The Putative Class Members were improperly classified as independent contractors and not paid overtime when they worked in excess of 40 hours per week.

88.     DCP's failure to pay overtime at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

89.     Whitman' experiences are therefore typical of the experiences of the Putative Class Members.

90.     The specific job titles or precise job locations of the various members of the Putative Class Members do not prevent collective treatment.

91.     Whitman has no interest contrary to, or in conflict with, the Putative Class Members.

92.     Like each Putative Class Member, Whitman has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

93.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

94.     Absent a collective action, many members of the Putative Class Members will not obtain redress of their injuries and DCP will reap the unjust benefits of violating the FLSA.

95.     Furthermore, even if some of the Putative Class Members could afford individual litigation against DCP, it would be unduly burdensome to the judicial system.

96.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members and provide for judicial consistency.

97.     The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

     a.     Whether DCP employed the members of the Class within the meaning of the applicable state and federal statutes, including the FLSA;

     b.     Whether DCP's decision to classify the members of the Class as exempt was made in good faith;

     c.     Whether DCP's decision to not pay time and a half for overtime to the members of the Putative Class was made in good faith;

     d.     Whether DCP's violation of the FLSA was willful; and

     e.     Whether DCP's illegal pay practices were applied to the Putative Class Members.

98. Whitman and the Putative Class Members sustained damages arising out of DCP's illegal and uniform employment policy.

99. Whitman knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

100. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

### JURY DEMAND

101. Whitman demands a trial by jury.

### RELIEF SOUGHT

102. WHEREFORE, Whitman prays for judgment against DCP as follows:

   a. An Order designating the Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b. For an Order appointing Whitman and his counsel to represent the interests of the FLSA Class;

   c. For an Order finding DCP liable to Whitman and the Putative Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

   d. For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

   e. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ *Michael A. Josephson*
      Michael A. Josephson
      Texas Bar No. 24014780
      mjosephson@mybackwages.com
      Andrew W. Dunlap
      Texas Bar No. 24078444
      adunlap@mybackwages.com
      **JOSEPHSON DUNLAP**
      11 Greenway Plaza, Suite 3050
      Houston, Texas 77046
      713-352-1100 – Telephone
      713-352-3300 – Facsimile

      Richard J. (Rex) Burch
      Texas Bar No. 24001807
      **BRUCKNER BURCH, P.L.L.C.**
      8 Greenway Plaza, Suite 1500
      Houston, Texas 77046
      713-877-8788 – Telephone
      713-877-8065 – Facsimile
      rburch@brucknerburch.com

      **ATTORNEYS IN CHARGE FOR PLAINTIFFS**